

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

UNITED STATES OF AMERICA

v.                                                     Criminal No. 3:16CR70

ELIYAHU NIREL HICKSON,

     Petitioner.

**MEMORANDUM OPINION**

Eliyahu Nirel Hickson, a federal inmate proceeding <u>pro se</u>, brings this MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT HER SENTENCE ("§ 2255 Motion," ECF No. 83). Hickson argues that she is entitled to relief on the following grounds:[1]

Claim One    (a) "[Hickson] was charged under [§] 924(c)(1) when [Hickson] did not use, carry, or possess a firearm," "so the charge is incorrect" and "[Hickson] should not have been convicted under [§] 924(c)(1);" and, (b) counsel rendered ineffective assistance[2] when counsel "made [Hickson] sign for the weapon [in the Plea Agreement,] stating it was the only way to drop the conspiracy charge to get less time." (§ 2255 Mot. 4.)

Claim Two    Counsel rendered ineffective assistance when (a) counsel "refused to negotiate a better plea for [Hickson] unless [Hickson] agreed to reveal more co-defendants," and, (b) counsel

---

[1] The Court employs the pagination assigned to the parties' submissions by the CM/ECF docketing system. The Court corrects the capitalization, punctuation, and spelling in the quotations from Hickson's submissions.

[2] "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI.

"came the same day that [the] answer was due to the prosecution regarding going to trial giving [Hickson] no time to consider options" and Hickson "felt unusually pressured by emails from [her] parents to her [counsel] . . . to make a quick decision." (Id.)

Claim Three      "[Hickson's] sentencing was [on] 10-27-16, but the Judgment wasn't signed until 12-28-16," and Hickson "should have [gone] before the Court for any changes to the Court's Judgment." (Id.)

The Government responded, asserting that Hickson's claims lack merit. (ECF No. 101.) Hickson filed a Reply. (ECF No. 102.) For the reasons set forth below, Hickson's § 2255 Motion (ECF No. 83) will be denied.

## I. FACTUAL AND PROCEDURAL HISTORY

On June 21, 2016, a grand jury charged Hickson with: conspiracy to interfere with interstate commerce by threats and violence, in violation of 18 U.S.C. § 371 (Count One); robbery affecting interstate commerce, in violation of 18 U.S.C. §§ 1951(a) and 2 (Count Two); and, using, carrying, possessing, and brandishing a firearm in furtherance of a crime of violence, to wit, the crime charged in Count Two, in violation of 18 U.S.C. § 924(c)(1) (Count Three). (Superseding Indictment 1-7, ECF No. 18.) On August 4, 2016, the Court granted the Government's motion to amend the Superseding Indictment. (See ECF No. 42.) In the Amended Superseding Indictment, the description of the firearm

was stricken as to the charges against Hickson. (Am. Superseding Indictment 3, 6, 7, ECF No. 41.)

Additionally, on August 4, 2016, Hickson pled guilty to Counts Two and Three of the Amended Superseding Indictment. (Plea Agreement ¶ 1, ECF No. 45.) In the Plea Agreement, Hickson agreed that she was pleading guilty because she was in fact guilty of the charged offenses, "admit[ted] the facts set forth in the statement of facts filed with [the] plea agreement[,] and agree[d] that those facts establish[ed] guilt of the offense charged beyond a reasonable doubt." (Id. ¶ 2.) Hickson also agreed that, with respect to Count Two, "[t]he maximum penalties for this offense are a maximum term of twenty years of imprisonment," and with respect to Count Three, "[t]he maximum penalties for this offense are a mandatory minimum term of seven years imprisonment up to a maximum term of life imprisonment, which sentence must run consecutive to any sentence imposed in Count [Two]." (Id. ¶ 1.) Additionally, Hickson agreed "that the Court has jurisdiction and authority to impose any sentence within the statutory maximum . . . ." (Id. ¶ 4.)

Further, the Plea Agreement provided that "[t]he United States makes no promise or representation concerning what sentence [Hickson would] receive . . . ." (Id.) Hickson agreed that she understood that she was waiving her right to appeal her conviction and "any sentence within the statutory maximum described above (or

the manner in which that sentence was determined) . . . ." (Id. ¶ 5.) "Upon execution of [the Plea Agreement] and the Court's acceptance of [Hickson's] plea of guilty, the United States [agreed to] move to dismiss the original indictment, and remaining count[] of the superseding indictment, against [Hickson] at the conclusion of sentencing." (Id. ¶ 10.)

In the accompanying Statement of Facts, Hickson agreed that the following facts were true and correct:

> 1. On April 11, 2016, defendant HICKSON entered the 7-Eleven store located at 389 E. Williamsburg Road in Henrico, Virginia.
> 2. The defendant approached the counter.
> 3. Defendant HICKSON then brandished a firearm, and demanded from the store clerk "T.S." money from the register, against "T.S.'s" will by means of actual and threatened force, violence and fear of injury, immediate and future, to "T.S.'s" person."
> 4. Store clerk "T.S." complied with defendant Hickson's demand, and placed the till on the counter, which was taken off the counter, taking approximately $200.00 in U.S. currency.
> 5. Defendant HICKSON then fled the store on foot.
> 6. At all relevant times, the identified 7-Eleven convenience store traded in goods obtained through, and sold in, interstate commerce, and the robbery therefore unlawfully obstructed, delayed and affected, interstate commerce.
> 7. The aforesaid firearm had previously been shipped and transported in interstate and foreign commerce, and meets the definition of a firearm as defined under Title 18, United States Code, Section 921(a)(3) in that it is designed to expel a projectile by means of an explosive.

(Statement of Facts ¶¶ 1-7, ECF No. 44.)[3]

---

[3] By signing the Statement of Facts, Hickson agreed: "I have consulted with my attorney regarding this Statement of Facts. I

During the Rule 11 proceedings on August 4, 2016, Hickson confirmed her understanding of the charges and the penalties for the charges. (See, e.g., Aug. 4, 2016 Tr. 8-11, ECF No. 88.) When asked if she "had enough time to discuss these charges [and any possible defenses] with [her] attorney," and to discuss "the terms of the plea agreement," Hickson responded in the affirmative. (Aug. 4, 2016 Tr. 13.) Further, Hickson responded in the affirmative when asked if she "[understood] that [she] [was] saying that [she had] committed these offenses, and [she] [could] never again say that [she] did not commit the offenses." (Aug. 4, 2016 Tr. 10.)

Hickson agreed that she was "entirely satisfied with the services of [her] attorney," meaning she "believe[d] [her] attorney ha[d] done everything possible to help [her] decide whether or not [she] should plead guilty in this matter." (Aug. 4, 2016 Tr. 13.) When asked if she understood that "[it was her] decision and [her] decision alone about whether [she] should plead guilty and that [she was] the only person who [could] make that decision," Hickson responded in the affirmative. (Aug. 4, 2016 Tr. 13-14.)

---

knowingly and voluntarily agree that each of the above-recited facts is true and correct and that had this matter gone to trial the United States could have proven each one beyond a reasonable doubt." (Statement of Facts 2.)

5

Further, Hickson agreed that she was pleading guilty to Count Two and Count Three because she was "in fact, guilty of [C]ount Two and [C]ount Three." (Aug. 4, 2016 Tr. 14.) When asked if, "other than what's contained in [the Plea Agreement]," "any law enforcement officer, the prosecutor, [Hickson's] attorney, or anyone else [had made her] any promises [that were] not contained within [the Plea Agreement]," Hickson responded: "No." (Aug. 4, 2016 Tr. 14.) The Court explained that Hickson's maximum sentence was twenty years of incarceration for Count Two and life imprisonment for Count Three, and that the exact sentence would depend upon the sentencing guidelines and Hickson's criminal history. (See, e.g., Aug. 4, 2016 Tr. 10–11, 14–15, 21–22.) Hickson agreed that she understood that these potential sentences were predictions not promises and that counsel had discussed potential sentences with her. (Aug. 4, 2016 Tr. 24–26.) The Court accepted Hickson's guilty plea and found it was knowing and voluntary and supported by an independent basis of fact. (Aug. 4, 2016 Tr. 27–28.)

After Hickson's guilty plea, a Pre-Sentence Investigation Report ("PSR") was prepared. (PSR, ECF No. 60.) With a three-point reduction for acceptance of responsibility (id. ¶¶ 36–37), Hickson's total offense level was 17. (Id. ¶ 38.) Based on Hickson's prior conviction, she received one criminal history point, and her criminal history placed her in Criminal History

6

Category I. (Id. ¶¶ 44-45.) Hickson's sentencing guidelines range was 24 to 30 months of incarceration on Count Two and 84 months of incarceration on Count Three, to be served consecutively. (Id. at 12.)

During sentencing, neither party noted any objections, additions, or corrections to the PSR. (ECF No. 60-1, at 1; see Oct. 27, 2016 Tr. 9, ECF No. 89.) After considering a host of relevant factors, the Court sentenced Hickson to 24 months of incarceration on Count Two and 84 months of incarceration on Count Three, to be served consecutively, for a total of 108 months of incarceration. (Oct. 27, 2016 Tr. 47; ECF No. 80, at 2.) The Judgment was entered on November 3, 2016 (ECF No. 76), and an Amended Judgment was entered on December 28, 2016 to correct two clerical errors.[4] (ECF No. 80, at 2-3.)

On March 10, 2017, Hickson filed a Notice of Appeal. (ECF No. 82.) Three days later, on March 13, 2017, the Court received the instant § 2255 Motion. (§ 2255 Mot. 1.) By Memorandum Order entered on April 7, 2017, the Court directed Hickson to show cause why her § 2255 Motion should proceed during the pendency of her direct appeal. (ECF No. 90, at 1.) In response, Hickson submitted

---

[4] Specifically, in the Amended Judgment, the count numbers were corrected to reflect that Hickson was sentenced to a term of imprisonment and supervised release on Counts Two and Three. (ECF No. 80, at 2-3.) In the original Judgment, Count Two was listed twice. (ECF No. 76, at 2-3.)

a letter to the Court in which she stated: "I have contacted my appeal lawyer, and sent off a letter myself on April 13th 2017, both stating I would like to withdraw my appeal, and continue to pursue my [§] 2255 [Motion]." (ECF No. 92, at 1.) Thereafter, the United States Court of Appeals for the Fourth Circuit granted Hickson's motion to voluntarily dismiss her appeal pursuant to Rule 42(b) of the Federal Rules of Appellate Procedure. (ECF No. 93.)

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

### A. Applicable Law

To demonstrate ineffective assistance of counsel, a convicted defendant must show first, that counsel's representation was deficient and second, that the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of Strickland, the convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" Burch v. Corcoran, 273 F.3d 577, 588 (4th Cir. 2001) (quoting Strickland, 466 U.S. at 689). The prejudice component requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability

sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. Id. at 697.

In the context of a guilty plea, the Supreme Court modified the second prong of Strickland to require a showing that "there is a reasonable probability that, but for counsel's errors, [petitioner] would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). Any assertion by Hickson that she would not have pled guilty if she had received better assistance from counsel is not dispositive of the issue. See United States v. Mora-Gomez, 875 F. Supp. 1208, 1214 (E.D. Va. 1995). Rather, "[t]his is an objective inquiry and [highly] dependent on the likely outcome of a trial had the defendant not pleaded guilty." Meyer v. Branker, 506 F.3d 358, 369 (4th Cir. 2007) (internal citation omitted) (citing Hill, 474 U.S. at 59-60). The Court looks to all the facts and circumstances surrounding a petitioner's plea, including the likelihood of conviction and any potential sentencing benefit to pleading guilty. See id. at 369-70.

In conducting the foregoing inquiry, the representations of the defendant, her lawyer, and the prosecutor during the plea proceedings, "as well as any findings made by the judge accepting

the plea, constitute a formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). In light of the strong presumption of verity that attaches to a petitioner's declarations during her plea proceedings, "in the absence of extraordinary circumstances, allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false.'" United States v. Lemaster, 403 F.3d 216, 221 (4th Cir. 2005) (internal citations omitted). Thus, the Fourth Circuit has admonished that "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." Id. at 221-22. No circumstances exist here that would lead the Court to consider Hickson's prior sworn statements as other than truthful.

   **B. Claim One (b), Claim Two (a), And Claim Two (b)**

   In Claim One (b) and Claim Two (a) and (b), Hickson presents claims of ineffective assistance of counsel with respect to her guilty plea. Specifically, in Claim One (b), Hickson contends that counsel rendered ineffective assistance when counsel "made [Hickson] sign for the weapon [in the Plea Agreement,] stating it

10

was the only way to drop the conspiracy charge to get less time."
(§ 2255 Mot. 4.)   Relatedly in Claim Two (a), Hickson argues that
counsel rendered ineffective assistance when counsel "refused to
negotiate a better plea for [Hickson] unless [Hickson] agreed to
reveal more co-defendants" (id.), and in Claim Two (b), Hickson
argues that counsel "came the same day that [the] answer was due
to the prosecution regarding going to trial giving [Hickson] no
time to consider options" and Hickson "felt unusually pressured by
emails from [her] parents to her [counsel] . . . to make a quick
decision." (Id.)

### 1.   Claims Precluded By Validly Entered Guilty Plea

Hickson's present allegations regarding counsel's actions
with respect to Hickson's guilty plea and the voluntariness of
Hickson's guilty plea are contrary to Hickson's sworn statements
during the Rule 11 plea colloquy.  Hickson's Plea Agreement and
the Statement of Facts accompanying Hickson's Plea Agreement also
undercut Hickson's present allegations regarding the circumstances
surrounding her decision to plead guilty.

Specifically, during the Rule 11 plea colloquy, Hickson
agreed that she was "entirely satisfied with the services of [her]
attorney," meaning she "believe[d] [her] attorney ha[d] done
everything possible to help [her] decide whether or not [she]
should plead guilty in this matter."  (Aug. 4, 2016 Tr. 13.)
Hickson also agreed that "[it was her] decision and [her] decision

11

alone about whether [she] should plead guilty," and she indicated that she understood that she was "the only person who [could] make that decision." (Aug. 4, 2016 Tr. 13-14.)  Additionally, in the Plea Agreement, Hickson agreed she was pleading guilty because she was in fact guilty of the charged offenses, "admit[ted] the facts set forth in the statement of facts filed with [the] plea agreement[,] and agree[d] that those facts establish guilt of the offense charged beyond a reasonable doubt." (Plea Agreement ¶ 2.)

In light of Hickson's sworn statements during the Rule 11 proceedings, absent extraordinary circumstances, Hickson's instant statements to the contrary are "palpably incredible." Lemaster, 403 F.3d at 222 (citation omitted); see Escamilla v. Jungwirth, 426 F.3d 868, 870 (7th Cir. 2005) (citations omitted) ("It is difficult to see how a collateral attack based on the proposition that the petitioner's own trial testimony was a pack of lies has any prospect of success.  Litigants must live with the stories that they tell under oath."), abrogated on other grounds by McQuiggin v. Perkins, 569 U.S. 383, 397 (2013).  Hickson fails to demonstrate any such extraordinary circumstances. See Lemaster, 403 F.3d at 221-22 (citations omitted) (explaining that "extraordinary circumstances" may exist if a "petitioner introduce[s] documentary evidence supporting his claim that he was severely ill, both physically and mentally, and uncounselled at the time of his Rule 11 colloquy").  Because Hickson fails to

demonstrate any extraordinary circumstances, "the truth of [her] sworn statements made during [the] Rule 11 colloquy is conclusively established." Id. at 222. For this reason alone, Claim One (b), and Claim Two (a) and (b) can be dismissed.

## 2. No Deficiency in Counsel's Performance

Hickson also fails to demonstrate any deficiency in counsel's performance. To support her ineffective assistance of counsel claims, Hickson submits a letter from her mother and a letter from her grandmother. (ECF No. 102-1, at 1-4.) The letters are signed and notarized; however, the letters are not sworn to under penalty of perjury and the notary did not administer an oath. (See id.) As such, the letters do not constitute sworn evidence. See Price v. Rochford, 947 F.2d 829, 832 (7th Cir. 1991) (refusing to consider documents verified in such a manner to avoid the penalty of perjury); Hogge v. Stephens, No. 3:09CV582, 2011 WL 2161100, at *2-3 & n.5 (E.D. Va. June 1, 2011) (treating statements sworn to under penalty of perjury, but made upon information and belief, as "mere pleading allegations") (quoting Walker v. Tyler Cty. Comm'n, 11 F. App'x 270, 274 (4th Cir. 2001)).

Furthermore, even setting aside this issue, the letters do not demonstrate that counsel provided ineffective assistance. In the letter from Hickson's mother, which is dated August 11, 2017, Hickson's mother states:

> I am writing to verify that I did write an email to
> my daughter encouraging her to take a plea agreement.
> It was brought to my attention that her lawyer did not
> feel she understood the serious nature of the crimes she
> was facing.  It was indicated that it was time sensitive,
> because if her co-defendant was to agree to cooperate or
> take a plea before her, it could be even more damaging
> to her.  I do not have an extensive knowledge of the
> law, so I do not know what proper protocol would be.
> However this is a statement of what I recall.  It was a
> very upsetting and stressful situation.

(ECF No. 102-1, at 1-2.)  The second letter, authored by Hickson's

grandmother, is also dated August 11, 2017, and in the letter, she

states:  "I'm the Grandmother of Eliyahu N. Hickson.  I was in a

meeting with Ms. Roberts, she was urging us to tell Eliyahu to

plea, and we told Eliyahu to do so.  Per her mother's email, we

didn't know she would get more time had we not."  (Id. at 3-4.)

In addition to the two letters, Hickson submits the e-mail

referenced in the August 11, 2017 letter from Hickson's mother.

(ECF No. 102-1, at 5; see id. at 1.)  In the e-mail, which is dated

July 19, 2016, Hickson's mother states:

> Eliyahu, we met with Ms. Roberts today.  After careful
> consideration, we (me, your dad, and your grandma) we
> think it's best for you to take a plea with no
> cooperation.  You are not going to escape this with
> little or no jail time.  This boy has clearly implicated
> you in this on jail recording phone calls to you.  If
> you go to trial, you can end up with 14 years or more.
> We have lost Isaiah forever, we can not have you gone
> for a long amount of years.  (double digits)  I am
> telling you, and if you have never listened to me
> before..... Now is the time to listen.  Your life
> depends on it.  If you go to trial, your sentence will
> be much more harsh because you went to trial.  You can
> accept a plea with no cooperation today.  You must tell
> Ms. Roberts today.  A plea with no cooperation says you

are accepting responsibility.  It does not have anything
to do with your co-defender.  It does not require you to
testify or give any information about anyone involved.
You will not be snitching as you young folks say.  The
plea with no cooperation will give you 7-9 years.  You
may serve 85%.  This is your best option.  If you were
to plea and cooperate you may have a little less, but we
fear retaliation on you or our family.  To avoid that
scenario, and get you back home as soon as possible.  I
am begging you to take this plea with no cooperation.
It has to be done today, if your co-defender pleads or
decides to cooperate against you, you will get stuck
with the maximum.  We do not want that.  I need you to
grow up now, you have to make sure Eliyahu gets the least
amount of time, and you can come home and start over.
This is not a situation to gamble or take chances with.
This is your life and we need you back home and safe.
We love you, we want the best for you.  We are not going
to steer you wrong.  We need you to listen.

(Id. (ellipses in original).)

The letters from Hickson's mother and grandmother and the
e-mail from Hickson's mother show that Hickson's family members
encouraged her to plead guilty, but not that they forced,
threatened, or coerced her to do so.  "Unavoidable influence or
pressure from sources such as codefendants, friends or family does
not make a plea involuntary."  Stano v. Dugger, 921 F.2d 1125,
1142 (11th Cir. 1991) (citation omitted); see Miles v. Dorsey, 61
F.3d 1459, 1469 (10th Cir. 1995) ("The fact that [a defendant's]
family urged [the defendant] to plead so that they would receive
the leniency offered under the plea agreement does not lead to the
conclusion that [the defendant's] no contest plea was
involuntary." (citations omitted)); Iaea v. Sunn, 800 F.2d 861,
867 (9th Cir. 1986) ("Mere advice or strong urging by third parties

to plead guilty based on the strength of the state's case does not constitute undue coercion." (citations omitted)).

Additionally, pursuant to the Court's June 23, 2017 Memorandum Order, which granted the Government's request to expand the record in this matter (see ECF No. 100, at 1-2), Hickson's former counsel, Valencia Roberts, provided an affidavit (ECF No. 107-1) regarding the specific allegations made by Hickson in her § 2255 Motion. With respect to Hickson's assertion that counsel "made [Hickson] sign for the weapon stating it was the only way to drop the conspiracy charge to get less time" (§ 2255 Mot. 4), in her affidavit, Ms. Roberts states:

> To the extent that the government extended a plea offer that included terms requiring Ms. Hickson to plead guilty to a single substantive robbery count in addition to the firearm count, I would have conveyed the terms of the plea offer to Ms. Hickson. However, I never advised Ms. Hickson that she had to plead guilty to any of the charges, and in fact fully explained to Ms. Hickson her right to plead not guilty and proceed to trial.

(ECF No. 107-1, at 1-2.) Further, with respect to Hickson's allegation that "counsel "refused to negotiate a better plea for [Hickson] unless [Hickson] agreed to reveal more co-defendants" (§ 2255 Mot. 4), Ms. Roberts states:

> Ms. Hickson was named in Counts 1-3 of a six-count Indictment charging her with Conspiracy to Commit Robbery Affecting Commerce, . . . Robbery Affecting Commerce, . . . and Using, Carrying, Possessing, or Brandishing a Firearm in Relation to a Crime of violence . . . . The firearm offense carried a mandatory minimum 7 years of incarceration to run consecutive to any sentence imposed for any other count of conviction.

16

Counsel attempted to negotiate plea terms that did not include a conviction for the firearm count, but the government was unwilling to extend such an offer. I did explain to Ms. Hickson that if she were convicted of the firearm offense, then the judge would have no choice but to impose a minimum term of 7 years imprisonment; and that the only way in which that sentence could be lawfully reduced is if the government filed a Rule 35 Motion based upon her substantial assistance.[5] Ms. Hickson advised that she was not interested in cooperating, and after later speaking with her parents, she was unwavering in her decision. I again attempted to persuade the attorney for the government to allow Ms. Hickson to plead guilty to the robbery/robberies only and explained Ms. Hickson's refusal to cooperate. The government would not agree to such an agreement.

(ECF No. 107-1, at 2-3 (citation omitted).) Additionally, as to Hickson's assertion that counsel "came the same day that [the] answer was due to the prosecution regarding going to trial giving [Hickson] no time to consider options" and Hickson "felt unusually pressured by emails from [her] parents to her [counsel] . . . to make a quick decision" (§ 2255 Mot. 4), Ms. Roberts states:

Initial discovery materials were provided by the government on or about June 28, 2016, and Ms. Hickson received a complete copy on or about July 1, 2016. Counsel met with Ms. Hickson at Meherrin River Regional Jail and reviewed video footage of the robberies as well as other evidence. We discussed trial rights, possible

---

[5] Store surveillance footage from at least one of the alleged robberies showed Ms. Hickson, co-defendant Talonte Ridley, and a third (unidentified suspect) as they entered into and attempted to rob the Walgreens Drug Store on Mechanicsville Turnpike in Henrico. This unidentified male is believed to be the same individual seen on surveillance footage from several other stores in which Ridley is alleged to have robbed. The government sought Ms. Hickson's cooperation and assistance in identifying the third suspect, which she steadfastly declined.

defenses, and possible outcomes based upon the weight of the evidence. Ms. Hickson advised that she wanted to speak with her parents about her options and solicit their input.[6] Ms. Hickson also asked that I meet with her parents and share the discovery material.

I met with Ms. Hickson's parents on July 19, 2016, and reviewed the government's evidence (including store surveillance footage), answered questions, and provided rough approximations of the guidelines based on various scenarios (including sentencing after trial and conviction, as well as sentencing following a plea on select counts).[7] After reviewing the material, her parents were visibly upset and inquired about possible pretrial resolution options. They expressed the opinion that their daughter should (1) accept responsibility for her own actions by entering into a plea agreement, and (2) not testify against any other individual(s) – for fear of retaliation. They advised that they intended to discuss the matter with [Hickson] during their next phone conversation.[8]

On July 22, 2016, I met with [Hickson] at Meherrin River Regional Jail and delivered the e-mail sent by her mother. We discussed the e-mail and I reviewed rough approximations of the guidelines based on various scenarios (conviction on all counts after trial, guilty plea to robbery/conspiracy only, guilty plea to robbery plus firearm offense, etc.). During the meeting, [Hickson] advised of her intention to plead guilty but undersigned counsel suggested that she take additional time to consider. It was agreed that [her] mother would contact counsel the following week with her final decision. Meanwhile, undersigned counsel advised

---

[6] Ms. Hickson was 19 years old at the time.

[7] As of the date of this meeting, [Hickson] had not yet decided to plead guilty nor had the government extended a plea offer.

[8] Undersigned counsel warned against [Hickson] speaking about her case – even with her parents – over the phone and suggested that the parents write a letter/e-mail to Ms. Hickson expressing their opinions and their reasoning. Undersigned counsel offered to deliver the letter to [Hickson] during a visit scheduled for later in the week. The letter, sent to undersigned counsel by [Hickson's] mother, is attached.

[Hickson] that counsel would <u>attempt</u> to secure a negotiated offer that did not include [Hickson's] pleading to the firearm count.

Over the course of the next several weeks, counsel sought to negotiate favorable plea terms with the assigned attorney for the government, as well as a supervisor in the U.S. Attorney's Office. Ultimately the government declined to extend an offer that did not include entry of a plea of guilty by [Hickson] to the brandishing count. [Hickson] was advised of the government's position but did not express opposition to the government's plea offer as extended. Draft plea documents were e-mailed to [Hickson's] mother on August 3, 2016.

On August 4, 2016, undersigned counsel met with [Hickson], prior to the plea hearing, in the United States Marshal Office and read/reviewed a copy of the final plea documents (Statement of Facts and Plea Agreement) in their entirety. [Hickson] advised that she understood and agreed with both documents.

(ECF No. 107-1, at 3-5 (citations omitted).) Contrary to Hickson's assertions regarding counsel's actions with respect to Hickson's decision to plead guilty, counsel clearly advised Hickson of her options as to her case, engaged in plea negotiations pursuant to Hickson's request, and advised Hickson of the Government's final plea offer. Thus, for these reasons, Hickson fails to demonstrate any deficiency in counsel's performance.

### 3. No Resulting Prejudice

Moreover, Hickson fails to establish any prejudice under <u>Strickland</u>. To establish prejudice, Hickson must show that "but for counsel's errors, [she] would not have pleaded guilty and would have insisted on going to trial." <u>Hill</u>, 474 U.S. at 59. "To determine [Hickson's] reasonable likelihood of going to trial,

[the Court] must look to the strength of the [Government's] case 'inasmuch as a reasonable defendant would surely take it into account.'" United States v. Swaby, 855 F.3d 233, 243 (4th Cir. 2017) (citation omitted). Hickson must show that a decision to proceed to trial "would have been rational under the circumstances." United States v. Fugit, 703 F.3d 248, 260 (4th Cir. 2012) (quoting Padilla v. Kentucky, 559 U.S. 356, 372 (2010)). "[Hickson's] subjective preferences, therefore, are not dispositive; what matters is whether proceeding to trial would have been objectively reasonable in light of all of the facts." Id. (citation omitted).

Here, the evidence of Hickson's guilt is overwhelming. Therefore, it is not reasonably likely that a defendant, such as Hickson, would have rationally proceeded to trial. Specifically, on April 11, 2016, Hickson entered a 7-Eleven store in Henrico, Virginia. Upon entering the store, Hickson brandished a firearm, and, by actual and threatened violence and against the store clerk, demanded that the store clerk give Hickson money from the register. The store clerk complied with Hickson's demand, and placed the register till on the counter. Approximately $200.00 was taken from the store. Based on this overwhelming evidence of guilt, a rational defendant would not have risked proceeding to trial. See Fugit, 703 F.3d at 260-61 ("[P]roceeding to trial would have been irrational where defendant 'faced overwhelming evidence of her

20

guilt' and 'had no rational defense, would have been convicted and would have faced a longer term of incarceration.'" (quoting Pilla v. United States, 668 F.3d 368, 373 (6th Cir. 2012))).

Furthermore, as part of Hickson's Plea Agreement, the Government agreed to "move to dismiss the original indictment, and the remaining count[] of the superseding indictment, against [Hickson]." (Plea Agreement ¶ 10.) Therefore, by pleading guilty to Counts Two and Three, with respect to Hickson's sentence, she received the benefit of the dismissal of the remaining count of the three-count Amended Superseding Indictment. Hickson also gained the benefit of a three-point reduction in offense level for acceptance of responsibility. (PSR ¶¶ 36-37.) Hickson's sworn statements, coupled with the Government's evidence and the tangible benefit received by Hickson, belies any reasonable probability that Hickson "would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59.

Thus, in addition to failing to demonstrate any deficiency of counsel, Hickson fails to demonstrate any resulting prejudice with respect to her decision to plead guilty. See Strickland, 466 U.S. at 687, 691; see also Hill, 474 U.S. at 59. Accordingly, Claim One (b), and Claim Two (a) and (b) will be dismissed.

### III.  FIREARM CHARGE

In Claim One (a), Hickson contends that "[she] was charged under [§] 924(c)(1) when [she] did not use, carry, or possess a firearm," "so the charge is incorrect" and "[Hickson] should not have been convicted under [§] 924(c)(1)."  (§ 2255 Mot. 4.)

Hickson's present allegations are contrary to her sworn statements during the Rule 11 plea colloquy and in the Statement of Facts accompanying Hickson's Plea Agreement.  Specifically, in the Statement of Facts, Hickson agreed that she "entered the 7-Eleven store," "approached the counter," and "then brandished a firearm, and demanded from the store clerk 'T.S.' money from the register, against 'T.S.'s' will by means of actual and threatened force, violence and fear of injury, immediate and future, to 'T.S.'s' person."  (Statement of Facts ¶¶ 1-3.)

During the Rule 11 plea colloquy, Hickson affirmed that she "agree[d] with what's documented in the statement of facts," (Aug. 4, 2016 Tr. 21), and, she "admit[ted] the facts set forth in the statement of facts filed with [the] plea agreement[,] and agree[d] that those facts establish[ed] guilt of the offense charged beyond a reasonable doubt."  (Plea Agreement ¶ 2.)  In light of Hickson's sworn statements during the Rule 11 proceedings, absent extraordinary circumstances, Hickson's instant statements to the contrary are again "palpably incredible."  United States v. Lemaster, 403 F.3d 216, 222 (4th Cir. 2005) (citation omitted);

*see* Escamilla v. Jungwirth, 426 F.3d 868, 870 (7th Cir. 2005) (citations omitted). Hickson fails to demonstrate any such extraordinary circumstances, and therefore, "the truth of [her] sworn statements made during [the] Rule 11 colloquy is conclusively established." *See* Lemaster, 403 F.3d at 221-22 (citations omitted). Accordingly, Claim One (a) will be dismissed.

## IV. AMENDED JUDGMENT

In Claim Three, Hickson contends that "[her] sentencing was [on] 10-27-16, but the Judgment wasn't signed until 12-28-16," and Hickson "should have [gone] before the Court for any changes to the Court's Judgment." (§ 2241 Pet. 4.)

Rule 36 of the Federal Rules of Criminal Procedure governs clerical errors in criminal cases, and provides that "[a]fter giving any notice it considers appropriate, the court may at any time correct a clerical error in a judgment, order, or other part of the record, or correct an error in the record arising from oversight or omission." Fed. R. Crim. P. 36. "Rule 36 may not be used to make a substantive correction or alteration to a criminal sentence." United States v. Cano, 558 F. App'x 936, 938 (11th Cir. 2014) (citation omitted).

After Hickson's sentencing, the Judgment was entered on November 3, 2016. (ECF No. 76, at 1-6.) Subsequently, an Amended Judgment was entered on December 28, 2016 to correct two clerical

23

errors.  (ECF No. 80, at 1-6.)  Specifically, in the original
Judgment, when setting forth the counts under which Hickson was
sentenced, Count Two was listed twice.  (ECF No. 76, at 2-3.)  In
the Amended Judgment, the count numbers were corrected to reflect
that Hickson was sentenced to a term of imprisonment and supervised
release on Counts Two and Three.  (ECF No. 80, at 2-3.)

This correction to the Amended Judgment did not alter the
length of Hickson's sentence, nor did the correction make any other
substantive change or alteration to Hickson's sentence.  (Id.; see
ECF No. 76, at 2-3.)  Such a correction to the counts of conviction
is "clerical in nature," and is permitted under Federal Rule of
Criminal Procedure 36.  Cano, 558 F. App'x at 939 (concluding that
the district court's amended judgment, which "changed the counts
of conviction so that they accurately reflected the jury's verdict
and [the United States Court of Appeals for the Eleventh Circuit's]
vacatur of Count 13," was a permissible clerical change under Rule
36 (citation omitted)); see Marmolejos v. United States, 789 F.3d
66, 71 (2d Cir. 2015) (concluding that "an amended judgment merely
correcting errors that were clerical does not constitute a 'new
judgment'" (citations omitted)).

Furthermore, because the Court's correction to the original
Judgment was clerical in nature and did not alter Hickson's
sentence, Hickson's presence was not required to correct the
original Judgment.  See United States v. Jackson, 923 F.2d 1494,

1497 (11th Cir. 1991) (holding that "where the entire sentencing package has not been set aside, a correction of [a] . . . sentence does not constitute a resentencing requiring the presence of the defendant, so long as the modification does not make the sentence more onerous" (footnote omitted) (citations omitted)); see also United States v. Brewer, 360 F. App'x 28, 29 (11th Cir. 2010) (discussing that "the established right to be present at sentencing does not translate into a right to be present whenever a court modifies a sentence" (citation omitted)).[9]

For these reasons, Claim Three lacks merit, and will be dismissed.

## V. HICKSON'S REQUEST FOR AN EVIDENTIARY HEARING

In Hickson's § 2255 Motion, Hickson requests, inter alia, that the Court "issue an evidentiary hearing." (ECF No. 83, at 6.) As set forth above, the Court concludes that dismissal of Hickson's claims is warranted, and no need exists to conduct an evidentiary

---

[9] Moreover, to the extent that Hickson claims that counsel was ineffective for failing to challenge the amendment to Hickson's Judgment, counsel reasonably eschewed raising this meritless claim. See Moore v. United States, 934 F. Supp. 724, 731 (E.D. Va. 1996) (explaining that "[f]ailure to raise a meritless argument can never amount to ineffective assistance"). Furthermore, Hickson fails to demonstrate that counsel's inaction regarding this meritless argument resulted in any deficiency of counsel or resulting prejudice. See Strickland v. Washington, 466 U.S. 668, 687, 691 (1984); see also Hill v. Lockhart, 474 U.S. 52, 59 (1985).

hearing. Accordingly, Hickson's request for an evidentiary hearing will be denied.

## VI. CONCLUSION

For the foregoing reasons, Hickson's claims will be dismissed. Hickson's request for an evidentiary hearing (ECF No. 83, at 6) will be denied. Hickson's § 2255 Motion (ECF No. 83) will be denied. The action will be dismissed. A certificate of appealability will be denied.

The Clerk is directed to send a copy of the Memorandum Opinion to Hickson and counsel of record.

It is so ORDERED.

_____    /s/    R E P

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: December 18, 2019